MALONE & BOWDEN TILE & MARBLE CO., Inc., v. MABLE IRENE HALL, WILLIE MAY LEDBETTER and GUS McCLELLAND.

Western Section, March 18, 1927.

No petition for Certiorari was filed.

1. **Trial. Instructions.** It is not error to refuse a special request when the point is covered under the general charge of the court.

In an action to recover damages for personal injuries where error was urged because the court refused to give a special request of defendant's held that the general charge covered the point and the refusal of the special request was not error.

2. **Trial. Instructions.** Instructions covering the common law properly refused where the action is based on a city ordinance.

Where the instruction refused covered the common law in regard to street crossings and the action was brought on a city ordinance which was not the same as the common law, held that the instruction was properly refused.

3. **Municipal corporations.** A municipal corporation may enact ordinances regulating traffic rules.

The right of a municipality to enact ordinances regulating and providing reasonable traffic rules and regulating the use of the city streets is well recognized. The coming into general use of automobiles and motor traffic has made necessary rules more strict than the old common law rules with reference to the liability of persons using the highway.

4. **Trial. Instructions.** Instruction which did not take into consideration a city ordinance which had been pleaded held erroneous.

Where the instruction offered would defeat the right of the plaintiff under an ordinance pleaded, held that the instruction was properly refused.

5. **Trial. Instructions.** Court's instruction to the jury to properly cover defendant's case.

In an action to recover for injuries received in an automobile collision where an ordinance of the city was pleaded, the court's general charge to the jury on the entire case examined and held without error.

6. **Negligence. The violation of a city ordinance is negligence per se.**

The violation of a valid city ordinance is negligence per se and where the action of the defendant in violating the ordinance is the proximate cause of the injury suffered, he is liable to the plaintiff.

7. **Trial. Instructions.** It is not error for the court to refuse an instruction defining or explaining a statute or ordinance where the statute or ordinance is intelligible and free from doubt.

In an action where it was urged that the court erred in not explaining the meaning of a city ordinance, held it is not necessary that the trial judge should do more than to charge the provisions of the ordinance, without going further and construing and defining its meaning, where the language of the ordinance is intelligible and free from doubt and ambiguity as to its meaning.

8. **Damages. Amount of damages to be awarded is a question for the jury.**

The question of damages is peculiarly within the province of the jury and the appellate court will not reverse on account of the amount unless it appears that the damages assessed are gross and palpable or unless it is shown that they were the result of prejudice, passion or corruption in the jury.

Appeal in Error from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

Affirmed.

Klewer, Gailor & Exby, of Memphis, for plaintiff in error.

G. T. Fitzhugh, and Hanover & Hanover, all of Memphis, for defendant in error.

SENTER, J.  These are three separate suits at law, one by Gus McClelland, one by Mable Irene Hall, and one by Willie May Ledbetter against the defendant Malone & Bowden Tile & Marble Company, Inc., a Tennessee corporation with its principal business and situs in the City of Memphis, Tennessee. These three suits grew out of the same automobile accident, and were tried by the Circuit Judge by consent of all the parties together, but separate judgments and jury verdicts in each respective case. The case of Gus McClelland resulted in a verdict by the jury and judgment of the court for the sum of $250. In this case both the plaintiff below and the defendant below entered motions for a new trial, and both motions were by the court overruled, and both parties plaintiff and defendant prayed and were granted appeals to this court and both parties have assigned errors.

The case of Mable Irene Hall resulted in a verdict by the jury and judgment of the court for the sum of $5,000. Both the plaintiff below and defendant below moved the court for a new trial in this case and both motions were overruled, and the defendant be-

low has appealed and assigned errors in this court.

The case of Willie May Ledbetter resulted in a verdict by the jury and judgment of the court for the sum of $1500. A motion for a new trial by the defendant below was overruled and disallowed, and to which action of the court the defendant excepted and has appealed to this court and has assigned errors.

The respective parties will be referred to hereafter in this opinion as in their original status of plaintiff and defendant.

The respective declarations filed by the respective plaintiffs contained practically the same averments, and alleged substantially the same cause of action, except that the declarations of Mable Irene Hall and Willie May Ledbetter alleged in their respective declarations that they were the guests of Gus McClelland in the automobile being driven by Gus McClelland at the time they sustained the alleged injuries for which they respectively sued.

The first count in each of the three declarations avers and charges common law negligence on the part of the defendant, and may be considered as a count on the facts.

The second count in each of the declarations avers and charges that the accident and resultant injuries was due to the operation of the automobile of the defendant by their agent in violation of the laws of the State of Tennessee, and especially chapter 132 of the Public Acts of 1925, in that the automobile of defendant at the time of the accident and just prior thereto was being driven at a rate of speed in excess of thirty miles per hour. In the second count of the respective declarations it is also averred that at the time of the accident the defendant or its agent, was guilty of negligence in the operation of said automobile, because the same was then being operated in violation of certain paragraphs of section 1 of an ordinance then in force in the City of Memphis passed February 16, 1926, and said provisions of said ordinance, the violation of which is averred in the second count of the respective declarations, are specifically set out and pleaded in said second count of said respective declarations.

To the respective declarations and each count thereof the defendant filed a plea of not guilty, and also the contributory negligence of the plaintiff.

Upon the consolidation of the three cases, by consent of the respective parties to the three respective cases, the three cases were tried together by the same jury, on the evidence introduced by the respective parties at the trial, and the separate judgments and verdicts rendered as above set forth.

The automobile collision occurred at the intersection of Peabody avenue and Dudley street in the City of Memphis. Plaintiff Gus McClelland was driving a Ford car and Willie May Ledbetter and

Mable Irene Hall and another lady were riding with him as his guests at the time of the collision. He was driving south on Dudley street, approaching Peabody avenue from the north; the truck was driven by the colored chauffeur of the defendant, and was going west on Peabody. It appears that Peabody runs east and west and Dudley north and south. There is some conflict in the evidence as to the exact location of the two respective vehicles at the time the collision occurred. We think it apparent from the record that the intersection of these streets was reached at approximately the same time by the respective vehicles. It appears that as the driver of the Ford car reached the north margin of Peabody, headed south, the speed was somewhat reduced. It also appears that the driver of the truck approached this street intersection about the time that the driver of the Ford approached the street intersection. There is but little if any conflict in the evidence with reference to the respective rate of speed at which the Ford and the truck respectively were being driven. The driver of the truck admits that he saw the Ford car about the time the Ford car reached the street intersection, and that the Ford car slowed up its speed, and he thought that he could pass the street intersection without the two vehicles colliding. He admits that he did not slacken the speed of his car after he saw that the Ford car was going to cross the street on which he was driving. There was some conflict in the evidence as to whether the truck first struck the Ford car, or whether the Ford car first struck the truck, but by a decided preponderance of the evidence, the truck first struck the Ford car, and in some way after striking it the first time the position of the two vehicles was such that the truck again, and in turning, struck the Ford car the second time turning it over. The physical facts with reference to the location of the two vehicles after the collision and after both vehicles had come to a full stop, showed that the collision must have occurred near the center of the intersection of these two streets, and a little north of the center of Peabody.

The several assignments of error filed by the defendant to the three respective judgments challenge the action of the trial judge in refusing to grant certain special requests offered by the defendant to be charged to the jury, and in charging the jury as to the theory of the defendant. These assignments of error are as follows; and offered in each of the cases:

"I.

"The court erred in failing to give defendant's special request No. 1, which was as follows:

" 'If you find that the defendant's truck was proceeding west on the north side of Peabody avenue at a reasonable rate of

speed as it approached the intersection of Dudley street; that the driver saw the automobile in which the plaintiffs were riding approaching from the north on Dudley street, saw the Ford car slowing up, and believed that the Ford would stop or slow sufficiently to permit the truck to pass westwardly across the intersection ahead of the Ford, and that the driver of the truck acted as a reasonably prudent man would have acted under the circumstances in proceeding across the intersection, and proceeded across in the exercise of reasonable care, and that while so crossing the intersection, the driver of the Ford proceeded south, causing the cars to collide in the intersection, then your verdict will be for the defendant.'

## "II.

"The court erred in failing to give defendant's special request' No. 2:

'" 'If you find that the driver of the truck approached the intersection in the exercise of reasonable care, and you find that he believed that the driver of the Ford would permit him to cross Dudley street, and that in this belief the driver acted as a reasonably prudent man would have acted, and that the collision was proximately brought about by the failure of the Ford driver to stop or yield the right-of-way to the track, then your verdict should be for the defendant."

## "III.

"The court erred in failing to give defendant's special request No. 3:

" 'It was the duty of the drivers of both vehicles on approaching the intersection of Peabody avenue and Dudley street to exercise reasonable and ordinary care, to have their vehicles under reasonable control and to keep a reasonably vigilant lookout ahead. Neither one reaching the crossing first would have been under any obligation to stop and wait for the other to approach and pass, but either in that situation would have been authorized to proceed on his way, assuming that the other, being in reasonable control of his vehicle, and otherwise in the exercise of ordinary care, as he should be, would not collide with him.

" 'If you find, therefore, that the driver of the truck approached the intersection exercising the care above described, and reached the intersection first, and that it appeared to the driver of the truck that the driver of the Ford saw him approaching and had opportunity to stop or slow up sufficiently to permit him to pass, and that he assumed that the driver of the Ford would stop or slow up sufficiently to permit him to pass, and that in such

assumption he acted as any reasonably prudent person would have acted, under the circumstances, then any mistake that the driver of the truck might have made in such assumption could not be charged to him as negligence.'

"IV.

"The court erred in failing to give defendant's special request No. 4:

" 'The plaintiffs rely on an ordinance providing that all vehicles traveling upon any street shall give the right-of-way to other vehicles approaching from along intersecting streets from the right. This does not mean that vehicles approaching along an intersecting street from the right have the right-of-way over vehicles approaching from the left under all circumstances.

" 'If you find that the driver of the truck approached the crossing with his truck under reasonable control, that he was keeping a reasonably vigilant lookout ahead and reached the east curb line of Dudley street before the Ford reached the north line of Peabody avenue, he would have the right-of-way over the Ford, and could not be charged with negligence in proceeding across the intersection unless you find that he proceeded into obvious danger, knowing it was impending.'

"V.

"The court erred in failing to give defendant's special request No. 5, which was as follows:

" 'If you find that the driver of the Ford on approaching Peabody avenue saw the truck approaching from the east one hundred or one hundred fifty feet away, and you find that the driver of the Ford had his car under reasonable control and could have stopped in time to have avoided the collision, and you further find that he watched the truck approaching without any apparent effort on the part of the driver of the truck: to stop, but continued across Peabody avenue, under the assumption that the truck would stop, or that he, the driver of the Ford, could get across in safety, and you find that in so doing the driver of the Ford failed to exercise reasonable and ordinary care and that his negligence in any of these respects was the proximate cause of the collision, then your verdict will be for the defendant.'

"VI.

"The court erred in failing to give defendant's special request No. 6, which was as follows:

" 'If you find that both Mr. McClelland and the truck driver were negligent in either approaching or using the intersection,

but that the negligence of Mr. McClelland was the proximate cause of the collision and resulting injuries, your verdict will be for the defendants, even though you find that the driver of the truck was guilty of negligence, which remotely contributed to bring about the collision.'

## "VII.

"The court erred in failing to give defendant's special request No. 7, which was as follows:

" 'The court charges you that the city ordinances proven were as binding on Mr. McClelland as they were on the driver of the truck, and if you find that McClelland violated any city ordinance which was admitted in evidence, and that such violation was a proximate cause of the collision, your verdict will be for the defendant in Mr. McClelland's case. And if you find that such violation was the sole, proximate and direct cause of the collision, your verdict will be for the defendant in all the cases.'

## "VIII.

"The court erred in not charging the jury as to the law on the defendant's theory. Nowhere in the charge was the nonliability of the defendant on its theory presented to the jury. In the charge the court stated the defendant's theory as follows:

" 'The theory of the defendant is that their chauffeur, who was driving west on Peabody, reached this intersection of Dudley street and slowed his truck up. That he also noticed this southbound car in which the plaintiffs were riding traveling on Dudley. That the car likewise slowed up and this truck driver, believing as he had a right to believe, that that southbound car was going to stop and give him the right over the crossing, proceeded to cross Dudley street. And after he had gotten out into the intersection of the street, that this Ford was rapidly driven and turned to the west, in an effort to run around in front of him and that the left hind wheel of this Ford car traveling south, hooked into the front end of his truck. That it was going rapidly, this Ford. And thereupon the driver lost control of the truck and that the truck again struck and upset this automobile at a time when the driver had lost control through no fault of his. They claim, therefore, that their chauffeur was not guilty of negligence, but was acting with reasonable and ordinary care and hence is not liable because he was not negligent. That, briefly, is the theory of the defendant.'

"IX.

The charge of the court as to matters relating to the non-liability of the defendants was ambiguous and misleading.

"X.

"(Assignment in Ledbetter and Hall Cases).

"The Court erred in charging the jury as follows:

"'The defendants claim that Mr. McClelland was driving carelessly and rapidly, and undertaking to run in front of its truck. So you will determine whether he was guilty of negligence which directly and proximately produced the injury; and if he was, he cannot recover; though that would not affect the suit of the two ladies who were his guests in the car.'"

In considering these several assignments of error we must do so in the light of the record as to pleadings and evidence; the general charge of the court to the jury, and chapter 32 of the Public Acts of 1911.

The first assignment of error above quoted is based upon the refusal of the court to give in charge to the jury defendant's special request No. 1. In the general charge on the subject of the theory of the defendant (the correctness of which is challenged by the defendant under the Eighth Assignment of Error), the court stated to the jury as follows:

"The theory of the defendant is that their chauffeur, who was driving west on Peabody, reached this intersection at Dudley street, and slowed his truck up. That he also noticed this southbound car in which the plaintiffs were riding traveling on Dudley. That that car likewise slowed up and this truck driver, believing as he had a right to believe, that that southbound car was going to stop and give him the right over the crossing, proceeded to cross Dudley street. And after he had gotten out into the intersection of the street, that this Ford was rapidly driven and turned to the west, in an effort to run around in front of him and that the left hind wheel of this Ford car traveling south, hooked into the front end of his truck. That it was going rapidly, this Ford. And thereupon the driver lost control of the truck and that the truck again struck and upset this automobile at a time when the driver had lost control through no fault of his. They claimed, therefore, that their chauffeur was not guilty of negligence, but was acting with reasonable and ordinary care and hence is not liable because he was not negligent. That, briefly, is the theory of the defendant."

By comparing the above quoted portion of the charge on the subject of the theory of the defendant with special requests Nos. 1 and 2, it will be seen that the learned trial judge substantially stated

the theory of the defendant as requested by special requests Nos. 1 and 2. The theory of the defendant, insofar as the same is disclosed by the evidence, is based upon the evidence of the chauffeur who was driving the truck of the defendant, and his statement of the accident. When his evidence is examined and analyzed, we think the charge of the court as given to the jury fully covers the theory of the defendant, and certainly as fully as the evidence would warrant. The objection to this portion of the general charge as set forth in the eighth assignment of error, will be further considered under that assignment of error, but at this time we are considering the sufficiency of the charge only on the question of the defendant's theory. It results that the first and second assignments of error are overruled.

The third assignment of error complains of the action of the court in refusing to give special request No. 3. This special request is a statement of the common law duty of the respective parties in the use of streets and highways and especially with reference to intersection of streets, crossing at angles. The city ordinance of the City of Memphis is invoked by the plaintiffs, which ordinance and laws of the City of Memphis are specifically pleaded by the plaintiffs in the second count of the respective declarations. This special request No. 3 ignores the rights and obligations of drivers of vehicles as provided by the city ordinance. This ordinance was given in charge to the jury by the learned trial judge, as it was his duty to do. The respective rights and liabilities of drivers of automotive and other vehicles in the City of Memphis is controlled by this ordinance, insofar as the ordinance in question is applicable to the facts of this case and the use of the streets by the respective parties at this street intersection. We think the action of the court in refusing to instruct the jury as requested by special request No. 3 of defendant was not error for the reasons stated above. This assignment of error is accordingly overruled.

Nor do we think it was error of the court to refuse to instruct the jury as requested by special request No. 4. We do not think this special request contains a proper construction and interpretation of the city ordinance. To have given the construction and interpretation of this ordinance as requested by defendant would have amounted to but little more, if any, than to have the ordinance merely declaratory of the common law.

The right of a municipality to enact ordinances regulating and providing reasonable traffic rules and regulations and use of city streets, is well recognized. The coming into general use of automobiles, and motor driven vehicles, has rendered it imperatively important that cities provide strict rules and regulations governing traffic on streets both in the business districts as well as residential

sections of the city. The common law rules and principles with reference to the liability of persons using highways and city streets as applied to modern traffic conditions would be insufficient and inadequate to properly safeguard and protect the public. It is for this reason that legislation has been enacted by States and municipalities more clearly defining the rights and liabilities of persons using highways and streets, and providing specific rules and regulations governing traffic. In the case of Nashville v. Black, 142 Tenn., 397, reported and annotated in 219 S. W., 1043, and also reported with elaborate annotations in 12 A. L. R., 453, is an interesting discussion of this subject in an able opinion by the late Mr. Justice Hall.

The fifth assignment of error goes to the action of the court in refusing to give defendant's special request No. 5. This special request does not recognize the rights of the plaintiff, either under the common law or under the city ordinance, and especially the rights of plaintiff under the city ordinance. Under this ordinance the driver of the Ford car approaching Peabody intersection with Dudley, going south on Dudley, had the right to rely upon the observance of the ordinance by the driver of the truck. This special request would deny the rights of plaintiff under the ordinance. There was no error in the action of the court in disallowing this special request and the fifth assignment of error is overruled.

In view of the general charge of the court on the question of negligence of the respective parties, and of contributory negligence, and proximate cause, we think special request No. 6 was properly refused. The court gave the jury clear and explicit instructions with reference to the law of negligence, proximate cause of injuries, and the rights, duties and obligations of persons using the streets in Memphis, both under the common law and under the laws and ordinances in force in the City of Memphis. The sixth assignment of error is not well taken, and is overruled. For the same reasons we are of the opinion that defendant's special request No. 7, refused by the learned trial judge, and made the basis of the seventh assignment of error, is not well taken and is overruled.

By the eighth assignment of error that portion of the general charge which states the theory of the defendant is challenged, on the ground that the court failed to state that if the jury found the facts in accordance with the theory of the defendant that the defendant would not be liable.

The court instructed the jury fully that the burden of proof was upon the plaintiff to sustain plaintiff's theory and contention, and if the plaintiffs had failed to do so by a preponderance of the evidence they could not recover. The learned trial judge made it clear to the jury in his general charge that the burden of proof was on the plaintiff's. It was also made clear to the jury the respective

rights, duties and obligations of the respective parties in the use of the streets. The mere failure of the court to instruct the jury that if they found from the evidence that the theory of the defendant was the true theory that plaintiffs could not recover, in view of his general charge, was not misleading or prejudicial. The general charge fully presented the respective theories of both plaintiffs and defendants, and it was made clear to the jury that unless the theory or contention of the plaintiffs in the respective suits was sustained by a preponderance of the evidence plaintiffs could not recover. In addition to this at the conclusion of the general charge, the learned trial judge asked the jury if he had made clear to them all questions covered by his charge. A member of the jury requested a fuller definition of what was meant by "proximate cause," and the learned trial judge proceeded to give a very clear and definite and accurate statement of the legal significance and meaning of this term. Another member of the jury, in response to the invitation of the learned trial judge for any member of the jury to ask any question that may occur to either of them as proper for a clearer understanding of the charge, asked and was answered as follows:

"JUROR: Where there might be found technical violation of one of the city ordinances occur as the court just laid down the law, and there may be an explanation that might operate against the technicality is it right to consider it in arriving at whether or not there was an act of negligence on account of that technicality of the city ordinance?

"THE COURT: Well, to begin with, unless the violation of the ordinance was a proximate cause of the accident, then the violation of the ordinance would not, of course, militate against the defendant. If a person is put in such peril or under such a sudden emergency as makes it necessary to violate a city ordinance, technically, in an effort to prevent a collision, that violation would not be such negligence as was the proximate cause of the injury."

In the general charge on the subject of negligence for the violation of a city ordinance, the learned trial judge stated to the jury as follows: "Now I have stated to you that a violation of the city ordinance is negligence per se,—as the lawyers call it. That means it is negligence in itself to violate a city ordinance. And you do not have to go any further than to find out whether the proof and evidence in the case shows that the defendant was violating the ordinance. If the defendant was, the defendant was guilty of negligence; but that negligence must have been the proximate and immediate cause of the injury before it will make for liability."

The court read to the jury in the course of the general charge the provisions of the city ordinance, the violation of which by the defendant was alleged by the plaintiffs in their respective declarations,

this ordinance having been introduced in evidence by the plaintiffs, and following which the court charged as follows: "So that, if you find from the preponderance of the evidence that the defendant's chauffeur was violating the city ordinance, and that violation was the proximate cause of this injury, the defendants would be liable in the cases of Miss Hall and Miss Ledbetter, and would also be liable in the case of McClelland, unless you find that Mr. McClelland was also guilty of negligence which directly and proximately contributed, with the negligence of this defendant's chauffeur to produce the injury. In that event he could not recover."

Chapter 32 of the Public Acts of 1911, regulating and defining the duties of appellate courts of this State in acting on motions to set aside verdicts and judgments and the granting of new trials, specifically provides that the appellate courts of this State shall not set aside verdicts and judgments and grant new trials on the ground of error in the charge of the judge to the jury . . ., unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial. We are of the opinion that the failure of the court to specifically state to the jury that if they found from the evidence that the theory of the defendant was the true and correct theory, that plaintiffs could not recover, in no way mislead the jury, nor did it affect the verdict of the jury. This assignment of error is overruled.

The ninth assignment of error is too general to be considered, and besides is not well taken.

The tenth assignment of error is addressed to the following portion of the general charge.

"The defendants claim that Mr. McClelland was driving carelessly and rapidly and undertaking to run in front of its truck. So you will determine whether he was guilty of negligence which directly and proximately produced the injuries; and if he was, he cannot recover; though that would not affect the suit of the two ladies who were his guests in the car."

If the above quoted language contained in the general charge was all that the court had to say to the jury on the subject of the rights of the two ladies to recover, even though the driver of the car in which they were riding was negligent, it would be subject to the criticism made, but when the entire charge is read and considered, we think the court made it clear that if the jury failed to find by a preponderance of the evidence that the accident resulting in the injuries complained of was the result of the negligence of defendant's chauffeur driving the truck, as the direct, proximate and efficient and contributing cause of the accident, that neither of the plaintiffs could

recover. This assignment of error is accordingly overruled, and disposes of the several assignments of error made by the defendant.

Numerous cases and authorities have been cited by the respective attorneys for the parties in the excellent briefs filed in this court. These authorities and cases, in the main, discuss laws and ordinances governing traffic on city streets, and the use of city streets, and traffic rules and regulations provided by laws and ordinances of municipalities and states regulating and governing traffic on streets and highways. An examination of the cases cited by the respective parties does not show any considerable contrariety of opinion by courts in considering and construing such laws and ordinances. General principles and rules in most of these cases are laid down as applying to the particular facts of the respective cases. We deem it unnecessary to refer to and discuss these cases in detail. Our Supreme Court in the case of Carroll-Blake Construction Co. v. Boyle, 140 Tenn., 178, 203 S. W., 945, held: "That the violation of a valid city ordinance is negligence per se, and that, where the act of the defendant in violating the ordinance is the proximate cause of the injury suffered, he is liable to the plaintiff." This case cites Schmalzried v. White, 97 Tenn., 37, 32 L. R. A., 782, 36 S. W., 393, and also the case of Adams v. Cumberland Inn Co., 117 Tenn., 470, 101 S. W., 428.

In the annotations and notes in the case of Neumann v. Apter, 95 Conn., 695, reported and annotated in 21 A. L. R., 970, with annotations on page 975 to 990 of the same volume, a large number of cases and authorities are collated on the subject of the respective rights of users of streets and highways, and especially street intersections, and the rights of the respective parties crossing intersecting streets with motor vehicles under ordinances similar to that in force in the City of Memphis and proved in this case. Among the cases annotated is that of Fox v. McCormick, 110 Kan., 91, 202 Pac., 614, and it is said: "The old rule giving the right-of-way at a street intersection to a vehicle reaching it in advance of one approaching on the cross-street was held superceded by an ordinance giving the right-of-way at a street intersection to the driver of the vehicle approaching from the right, the court stating that possibly the old rule might be regarded as changed by general practice, irrespective of legislation, since it was not suitable to automobile traffic, as the great speed of these vehicles requires the possession of the right-of-way to be determined before either car has entered the intersection." (The quoted language is from the annotation on page 975 of 21 A. L. R.).

On page 976 of the same volume numerous cases are cited in support of the rule that it is negligence per se for the driver of the vehicle to fail to observe a city ordinance giving the right-of-way to vehicles approaching intersecting roads from the right, and if the

violation of such ordinance is the proximate cause of injury the driver of the vehicle violating the ordinance is liable for the resulting damage.

Nor do we think it necessary that the trial judge should do more than to charge the provisions of the ordinance, without going further and construing and defining its meaning, where the language of the ordinance is intelligible and free from doubt and ambiguity as to its meaning. Frequently the clearest meaning of an ordinance, or a statute, is expressed in the language of the ordinance or statute, and a trial judge, however careful in the selection of his words, could add nothing to the clarity of the ordinance by undertaking to explain its meaning. Lamke v. Hardy Bros. Trucking Co., 96 Conn., 505, 114 Atl., 533.

After a careful review of the pleadings, the evidence and the charge of the court to the jury, we find no reversible error under any of the assignments of error of defendants. It results that all the assignments of error by defendant are overruled.

We come now to consider the assignments of error of plaintiff Gus McClelland. These are five in number, and are as follows:

"The court erred in failing to grant the plaintiff a new trial on the following grounds:

"I.

"That the damages are inadequate.

"II.

"That the damages were so inadequate as to show prejudice and caprice on the part of the jury.

"III.

"That the verdict as to the damages is against the overwhelming weight of the evidence.

"IV.

"That there is on evidence to support such a verdict.

"V.

"The verdict is contrary to the law."

These several assignments of error present but the single question, the alleged inadequacy of the verdict of the jury and the judgment of the court.

Where there is a jury verdict in favor of plaintiff in a personal injury case, the amount of the damages to be awarded is a question for the jury to determine, under proper instruction by the court. The rule on this subject is stated in 4 C. J., 869, under the title of "Appeal and Error," Sec. 2846:

"A finding of value or the amount of damages is ordinarily so much a matter within the exclusive province of the jury that it will not be disturbed by the reviewing court, and this is especially true where the verdict has been approved by the trial court. The operation of the rule is not affected by the fact that, in the opinion of the reviewing court the amount awarded by the jury is larger or smaller than it should have been, where there was evidence to sustain the verdict, and nothing to induce the belief that the jury was actuated by prejudice, partiality or corruption. Nor will a verdict be disturbed merely because is it for less than the damages testified to by the witnesses, or because the amount found is between the estimates of witnesses."

While there was some evidence to the effect that the injuries of plaintiff were more serious than the amount of the verdict would indicate, yet the jury and the trial judge heard the evidence of the witnesses on the subject of the nature and extent of plaintiff's injuries. They had an opportunity of observing the manner and conduct of the witnesses who testified before them. The plaintiff was a witness in his own behalf, was present during the trial of the case, and the jury had every opportunity to observe his demeanor, and to judge for themselves the probable extent of the injuries. The trial judge approved the verdict of the jury by denying plaintiff's motion for a new trial on the same grounds as are now assigned for error.

In Thompson v. French, 10 Yerg., 452, it is said by the court: "The question of damages is peculiarly within the province of the jury, and the appellate court would not reverse for a mistake in the amount unless it were gross and palpable." See also Boggess v. Gamble, 3 Coldw., 148, 156. In Goodall v. Thurman, 1 Head., 209, the rule is thus stated: "In trials at common law, the jury are the proper judges of damages; and where there is no certain measure of damages, the court will not, ordinarily, disturb their verdict unless on grounds of prejudice, passion or corruption in the jury." The following statement of the rule announced in the case of Boyers v. Pratt, 1 Humph., 91, has been cited and approved in numerous cases by our Supreme Court:

"A new trial is never granted in a civil action for a personal tort, on the ground that the damages found by the jury are excessive, unless the damages are flagrantly outrageous and extravagant, evincing intemperance, passion, partiality, or corruption, such are all mankind would at once pronounce unreasonable."

We think the rule is so well-settled that it is unnecessary to cite authorities in support of the general proposition that an appellate court will not set aside a verdict of the jury, approved by the trial

judge, on the grounds that the verdict is excessive or inadequate, unless a review of the facts as to the nature and extent of the injuries are such as to satisfy the court that the verdict of the jury was the result of prejudice, passion, caprice or corruption. In the case of Tennessee Coal Etc., Co. v. Roddy, 85 Tenn., 402, 5 S. W., 286, said the court, speaking through Mr. Justice Lurton: "The rule of this court that it will not disturb the verdict of the jury upon facts fairly submitted to them upon a correct charge, unless there is a great preponderance of evidence against the verdict is based very largely upon fact that a different rule governs the Circuit Judge in considering motions for new trials. The court attaches great weight to the fact that the Circuit Judge, having seen and heard the witnesses testify, and having submitted the case to a jury known to himself, has stamped the verdict with his approval by refusing to grant a new trial."

The learned trial judge fully, correctly and accurately instructed the jury on the subject of compensatory damages, and his charge on the subject fully meets the rule as laid down in Railroad v. Wallace, 91 Tenn., 34, 17 S. W., 882, 14 L. R. A., 548.

We cannot say, after a careful review of the evidence with reference to the nature and extent of the injuries sustained by plaintiff, that the verdict of the jury was so inadequate as to warrant this court in reaching a conclusion that the verdict of the jury indicated prejudice, passion, or caprice. Nor do we think this court would be warranted, under the facts and the record, in reversing and remanding this case for a new trial on the ground that the verdict of the jury, approved by the trial judge, was inadequate to fairly compensate the plaintiff for the injuries sustained.

It results that all assignments of error for both plaintiff and defendant are overruled, and the judgments in the respective cases are affirmed. The defendant and sureties on its appeal bond will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.